Date signed June 30, 2011



DUNCAN W. KEIR
U. S. BANKRUPTCY JUDGE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
at Baltimore

| | | |
|---|---|---|
| In Re: | * | |
| ANNIE L. BYRD | * | Case No.  10-30862 |
| | * | Chapter  7 |
| Debtor | * | |
| ************************************ | * | |
| ANNIE L. BYRD | * | |
| | * | |
| Movant, | * | |
| vs. | * | |
| RONALD A. WRAY | * | |
| | * | |
| Respondent. | * | |

## MEMORANDUM OF DECISION

Before the Court is a Motion to Disgorge Fee filed in proper person by Debtor Annie L. Byrd against her former counsel, Ronald A. Wray ("Mr. Wray"). An evidentiary hearing upon the motion was held by the Court for a significant part of two days, after which the Court took the matter under advisement.

The Debtor's Chapter 7 bankruptcy case was filed on September 3, 2009 as a joint case with Debtor's husband Kevin E. Byrd, and assigned case no. 09-26620 DK. The joint debtors were represented by attorney Christopher Fascetta. Because two prior bankruptcy cases by joint debtors

had been dismissed within one year of the filing of case no. 09-26620, the filing of the petition for case no. 09-26620 did not result in an automatic stay.[1]  Attorney Fascetta filed a motion seeking the imposition of a stay.

At the hearing held to consider the motion to impose a stay, Creditors, The Jumping Broom, LLC and Cheryl Smiler (together, "Plaintiff Creditors"), appeared by counsel and argued against the motion.  Plaintiff Creditors asserted that any imposition of an automatic stay should exclude a pending action they filed against debtors in the Circuit Court for Prince George's County in which Plaintiff Creditors were seeking a judgment against the debtors for alleged fraudulent acts (the "State Court Case").  Counsel for debtors did not oppose excepting the State Court Case from the requested automatic stay and therefore consented to allowing the State Court to determine the disputed factual issues between the parties.  For the reasons stated by this Court at the conclusion of the hearing, a stay was created but the Plaintiff Creditors were permitted to proceed to trial in the State Court Case and obtain a final judgment for the purpose of determining the dispute as to the liability (if any) of the debtors.  The court specifically stated that the asserted actions in the State Court Case could constitute a non-dischargeable debt. An order containing this ruling was entered by this Court on September 28, 2009.

The evidence now reveals that during that period of time when the joint case was pending, divorce proceedings were commenced in state court between Mr. and Ms. Byrd.  In that action Ms. Byrd was represented by attorney Salvatore Anello.  Mr. Anello became concerned about the proceedings in the State Court Case in which he had not appeared as counsel.  His concern was that the allegations against Ms. Byrd could lead to potential criminal charges.  If so, Ms. Byrd might

---

[1]*See* 11 U.S.C. § 362(c)(4).

need to avail herself of the privilege against self incrimination. However, in the State Court Case Ms. Byrd had been subpoenaed and was facing a motion for summary judgment that required an evidentiary response. Mr. Anello was concerned that any testimony provided by Ms. Byrd in the civil action might abrogate her privilege to refuse to speak if later faced with criminal charges.

In this context, Ms. Byrd engaged the services of attorney Wray to represent her individually in bankruptcy proceedings. On January 25, 2010, Ms. Byrd and Mr. Wray entered into a Retainer Agreement. *Wray Exh. 1*. This document was dated three days after a meeting had been arranged between Mr. Anello and Mr. Wray to discuss Ms. Byrd's situation and how further bankruptcy actions could possibly assist her. However, as testified to by Mr. Anello and not disputed by Mr. Wray, Mr. Wray did not attend the scheduled meeting and also failed to inform Mr. Anello that he was not attending.

Under the terms of the January 25, 2010 Retainer Agreement, Mr. Wray was to represent Ms. Byrd: *"upon determination of liabilities resulting from P.G. County Civil case # 09-19560. . . . Representation shall begin at this time on the preparation and filing of a bankruptcy case under Chapter 13 of the Bankruptcy Code."* Mr. Wray testified that he began drafting documents and a plan for a Chapter 13 case. However nothing was filed. Mr. Wray asserts that Ms. Byrd refused to consider a Chapter 13 case that might include some distribution to the disputed Plaintiff Creditors. It appears from Mr. Wray's testimony that he believed either that an automatic stay was in place as to the State Court Case, or that one would be created if a new Chapter 13 bankruptcy case was filed. This misunderstanding as to the automatic stay is later reflected in emails introduced by Ms. Byrd. *Byrd Exh. E, U*. It also is unclear as to how any new case could have been filed and maintained by Ms. Byrd while the joint case was pending. It is clear that by virtue of the automatic stay order

3

which was in the public record and the effect of Section 362(c)(4), the State Court Case was not stayed and a new filing would not necessarily have resulted in staying that case from proceeding.

On June 18, 2010, summary judgment was entered in the State Court Case against Ms. Byrd and other defendants, including specific findings of constructive fraud and defalcation. No one appeared on behalf of Ms. Byrd at the State Court hearing upon the motion. The Plaintiff Creditors then filed an adversary proceeding in this Court seeking to have the judgment debt determined to be non-dischargeable. A motion for summary judgment was filed therein by the Plaintiff Creditors arguing collateral estoppel based upon the state court judgment. At this point Ms. Byrd and Mr. Wray entered into a new Retainer Agreement. *Wray Exh. 2*. That agreement states: *"Representation shall begin at this time on the preparation and filing of a bankruptcy case under Chapter 7 of the Bankruptcy Code [and] . . . .Fee includes representation in case no. CAL 09-19560."* Although the second retainer agreement states *"includes representation in case no CAL 09-199560,"* Mr. Wray asserts he was only entering his appearance in the State Court Case to monitor the proceedings. Ms. Byrd testified that Mr. Wray was to represent her in the State Court Case.

On August 6, 2010, Debtor, by Mr. Wray filed a motion in the joint bankruptcy case seeking to sever the case and allow Ms. Byrd to proceed separately from her husband. The motion was granted and Ms. Byrd's ongoing case (not a new case) was assigned a separate case number as reflected in the caption of this Memorandum. Prior to the severance order, the joint debtors received a Chapter 7 discharge entered June 15, 2010.

Mr.Wray, on behalf of Ms. Byrd, also filed a response to Plaintiff Creditors' motion for summary judgment in the adversary proceeding before this court seeking a determination of non-

dischargeability and he appeared and argued at the hearing thereupon. This Court granted summary judgment finding that the judgment debt was not dischargeable under Section 523(a)(4) based upon the State Court finding of defalcation. The court denied summary judgment by preclusion under Section 523(a)(2) because the State Court finding as to fraud was based upon constructive fraud as distinguished from actual fraud.

According to Mr. Wray's testimony, after the hearing upon the motion for summary judgment, he requested that Plaintiff Creditors' counsel agree to seek collection of the debt first from other parties and that the Plaintiff Creditors have in fact done so. The evidence reflects that the Plaintiff Creditors requested and obtained an order from the State Court imposing a constructive trust upon assets held by an entity in which Ms. Byrd had an ownership interest.[2]

Ms. Byrd seeks an order of disgorgement asserting that she engaged Mr. Wray to represent her in defending against the actions of the Plaintiff Creditors and that he failed to do so. Ms. Byrd asserts that Mr. Wray was to have defended the State Court Case but did not, and that he also spoke to her at times in a manner that made her uncomfortable and that Mr. Wray was making unwanted personal advances.

Mr. Wray denies the allegations and asserts that he did all that he agreed to do in representing Ms. Byrd. He states that he wanted to do a Chapter 13 plan in which possibly part of the disputed claim would have been amortized over a five year period in exchange for any remaining asserted claim by the Plaintiff Creditors being released. He suggested that first the existence, and amount of any liability needed to be established in the State Court Case. He was to

---

[2] The email exhibits reflect that Ms. Byrd had the impression that the constructive trust somehow violated the automatic stay but at some point accepted Mr. Wray's correct advice that the trust order was not against her.

"stand by" until that was resolved. This view of the first retainer arrangement is consistent with the written interlineations reflected on the exhibit submitted by Mr. Wray. *Wray Exh. 1.* Further there is no language in that agreement reflecting any undertaking by Mr. Wray at that time to represent Ms. Byrd in the State Court Case.

    Mindful that Ms. Byrd has also filed a complaint against Mr. Wray before the Attorney Grievance Commission, it is important for this Court to delineate the narrow issue that is before it. This is not a lawsuit asserting malpractice against Mr. Wray and seeking damages. Nor is this Court determining the value (or lack thereof) of Mr. Wray's representation as it pertains to the State Court Case. Section 329(a)[3] provides that this Court may determine whether compensation received by debtor's counsel "for services rendered or to be rendered in contemplation of or in connection with" the bankruptcy case exceeds the value of such services. Accordingly this Court does not review and decide the scope of agreed representation and performance of such

---

[3]That Section provides:
> (a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.
> (b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to -
>> (1) the estate, if the property transferred -
>>> (A) would have been property of the estate; or
>>> (B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or
>>
>> (2) the entity that made such payment.

11 U.S.C. § 329.

representation in the State Court Case.

Section 329 of the Bankruptcy Code obligates attorneys applying for compensation under the Bankruptcy Code to provide statements of the agreed to compensation for their services, whether for actual services rendered or services to be rendered in connection with the bankruptcy case, and regardless of whether the attorney will seek compensation from the estate.[4] If an issue as to the reasonableness of an attorneys' fees has been raised under Section 329, as in this case, the court and parties in interest are not responsible for parsing out the facts necessary to explain the fees requested.[5] Rather, the burden is on the attorney to justify the fee application.[6]

Mr. Wray did not put into evidence, and presumably did not keep, time sheets detailing his efforts in this case. Because the fee agreed to in the Amended Retainer Agreement was for a fixed sum of $5,000 ( known as a "Flat Fee") the absence of time sheet evidence is not *per se* a lack of proof of the reasonableness of the fee compared to the value of the work performed. Such evidence likely would have been relevant.[7] A review of the legal advice which Mr. Wray testified that he provided, the pleadings that were filed, and the record of his oral argument in opposition to the motion for summary judgment in the adversary proceeding as well as the other evidence supports a conclusion that some reduction in the amount paid is required and must be disgorged.

Reasonable services which Mr. Wray was required to provide included adequate communication with the client and reasonable investigation into the facts and circumstances in order to provide an informed analysis as to whether and how a bankruptcy case could benefit the

---

[4] 11 U.S.C. 329(a). *See also In re Gay*, 390 B.R. 562, 570 (Bankr. D. Md. 2008).
[5] *In re* Gay, 390 B.R. at 570.
[6] *In re Williams*, 357 B.R. 434, 439 (6th Cir. B.A.P. 2007).
[7] *Id.*

client. At the outset he failed to fully carry out such duty by failure to meet with Ms. Byrd's other counsel who was knowledgeable about the client's affairs and failing to inform Mr. Anello that he was not going to keep that appointment. Both Ms. Byrd and Mr. Anello may have either over-expected what bankruptcy action could accomplish, or had more hope than supportable. But Mr. Wray could not adequately advise without reasonable consultation. In addition, it appears that Mr. Wray at the beginning of his representation did not use the public record that was available via PACER to ascertain the actual situation as to the lack of an automatic stay as to the Plaintiff Creditors' lawsuit and the record of prior case dismissals triggering that situation. Mr. Wray spoke of and presumably advised as to a Chapter 13 case. However the public record would also disclose that Ms. Byrd had already received a discharge in the instant Chapter 7 case and would not have been eligible for another discharge in a Chapter 13. That same record would inform counsel that the State Court Case was permitted to be tried so as to establish the existence or non existence of a debt incurred by fraud or defalcation. A Chapter 13 discharge, like the Chapter 7 discharge, would not have discharged a debt found to have been incurred by actual fraud or defalcation by Ms. Byrd.[8] It is therefore unclear as to how the legal strategy was to be carried out.

     At some point it appears that Mr. Wray may have determined that the debt asserted by the Plaintiff Creditors would have to be satisfied by payment, perhaps through a plan. The Court finds from the Exhibits, testimony and demeanor of Ms. Byrd that she vacillated as to agreeing to any recognition of the debt. Meanwhile, the State Court entered summary judgment for the Plaintiff Creditors and they launched the adversary proceeding to have that judgment debt determined non-dischargeable based upon the State Court's findings.

---

[8] 11 U.S.C. § 1328(a)(2).

Mr. Wray then being retained under the Amended Retainer Agreement, appears to have concentrated his representation on opposing the adversary proceeding. The court finds little to criticize in Mr. Wray's efforts in opposing the summary judgment motion of the Plaintiff Creditors in the adversary proceeding. While his argued-for position as to lack of recognition by collateral estoppel of the State Court's fraud finding was ultimately not successful, it was not frivolous, was reasonably well presented, and possibly fastened on the only presentable argument (that summary judgment in the State Court, where Ms. Byrd did not appear to argue at the hearing thereupon, was tantamount to a default judgment) that might have gained traction after the State Court Case had proceeded to final judgment. After losing the argument, his continued efforts to have the Plaintiff Creditors in effect marshal their efforts to collect also cannot be found deficient.

However Mr. Wray's statements at trial and in response to an investigation by the United States Trustee[9] as to his strategy following the determination by this Court of summary judgment based upon this Court's conclusions as to constructive fraud is to this Court not supportable to the extent that it is even comprehensible. This Court determined the judgment of the State Court to be a non-dischargable debt based upon the finding of defalcation. How this Court's denial of finding the same debt to be non-dischargeable based upon an alternative theory of fraud somehow created an avenue for altering the State Court Judgment is not apparent to this Court.

As to Ms. Byrd's assertion that Mr. Wray failed to subpoena witnesses to testify at the hearing upon the motion for summary judgment in the adversary proceeding to determine debt non-dischargeable, again Mr. Wray appears to have been confused by Ms. Byrd's insistence that somehow facts bearing on her theory of the underlying debt dispute would be presentable at that

---

[9]*Wray Exh. 6.*

hearing. *Byrd Exh. U*. He emailed indicating he found Ms. Byrd's list of witnesses useful and that he was working on subpoenas which Ms. Byrd complains were never obtained. Mr. Wray's deficient representation is found here to be his failure to adequately advise his client as to his failure to subpoena witnesses. The witnesses were completely immaterial to the basis for summary judgment pending before this Court. The motion for summary judgment to determine the judgment debt non-dischargeable was based solely on the asserted preclusive effect of the State Court judgment. Until or unless denied, evidence of the underlying events was not relevant and the witnesses would not have been allowed to testify.

   Mr. Wray filed an amended Disclosure of Compensation in the bankruptcy case, stating that his fee for the bankruptcy work was to be $5,000. He disclosed that he had received $3,094 plus reimbursement for the filing fee for the severance of the joint case in the amount of $299. *Court Exh. 1*. The receipts entered into evidence and the Retainer Agreements reflect a total receipt of $3,793, presumably including the reimbursement which computes to the fee received being $3,494 *Wray Exh. 1; Byrd Exh. C*. It is apparent that Mr. Wray did not keep a clear record of receipts and balance due. At one point Ms. Byrd appeared to agree with what the evidence indicates as to amounts paid, stating in an email dated December 9, 2010 that she had paid almost $4,000. *Byrd Exh. T*. However, without further explanation or support, on December 11, 2010, Ms. Byrd asserted that she paid $5,000. *Byrd Exh. T*.

   Looking at the effort and effectiveness of the services rendered by Mr. Wray, the Court finds that the value of Mr. Wray's services is accurately reflected by the amount to which Mr. Wray agreed to reduce his fee as reflected in the December 22, 2010, letter from the Office of the United

States Trustee[10]. The value of Mr. Wray's services in the bankruptcy case is $2,300. While providing less than exemplary services and advice on some occasions, Mr. Wray made a concerted effort to resist the summary judgment in this Court and to try to protect Ms. Byrd from the full brunt of the judgment debt. While his confusion may have caused Ms. Byrd to assume she could escape all consequences of the facts asserted by Plaintiff Creditors through a bankruptcy case, Mr. Wray from the start communicated that at least a part of the debt might be required to be paid, perhaps through a bankruptcy plan. However, Ms. Byrd decided to resist all liability in the State Court.

The amount of disgorgement is $1,194. An Order reflected these findings and conclusions will be entered.

**End of Memorandum**

---

[10]*Byrd Exh. A*. The agreed refund apparently was not later carried out due to the dispute over amounts paid.